IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CRISTINA COELLO-PAGAN,

    Plaintiff,

vs.                                                                                  No. 1:13-CV-527 MV/KRS

WELLS FARGO BANK, N.A.,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Defendant's Motion to Dismiss, filed September 23, 2021. (Doc. 125). Plaintiff, who is proceeding *pro se*, filed a response to the Motion to Dismiss on October 12, 2021, and Defendant filed a reply on October 25, 2021. (Docs. 126 and 127). In addition, on November 22, 2021 Plaintiff filed a "Memorandum" in support of arguments raised in her response. (Doc. 129). This case has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) to conduct hearings, if warranted, and perform legal analysis required to recommend an ultimate disposition of the case. (Doc. 120). Having considered the parties' submissions, the relevant law, and the record in this case, the Court recommends granting Defendant's Motion to Dismiss and dismissing this case with prejudice.

    **I.**        **Factual Background and Procedural History**

In 2008, Plaintiff obtained a mortgage loan from Horizon Mortgage, LLC for $319,200.00 and secured by a mortgage on property located at 7109 Tree Line Ave.,

Albuquerque, New Mexico 87114. (Doc. 1) at 2; (Doc. 125) at 2-3; (Doc. 125-1) at 8-30.[1] The mortgage was later assigned to Defendant. (Doc. 125) at 3; (Doc. 7-2) at 1. On October 13, 2011, Defendant filed a foreclosure action in state court alleging Plaintiff had defaulted on the loan. (Doc. 125) at 1, n.1 (Case No. D-202-CV-2011-10470, "first state lawsuit").[2] On June 12, 2012, the state court entered a Default Judgment, Decree of Foreclosure, and Appointment of Special Master, after which a foreclosure sale took place and an order approving the foreclosure sale was entered on February 22, 2013. (Doc. 125) at 1, n.1; (Doc. 7-3). In 2012 and 2013, Plaintiff filed motions to set aside and vacate the judgment. (Doc. 12-1); (Docs. 7-4 and 7-6). In those motions, Plaintiff challenged Defendant's status as a holder of the promissory note and disputed the amount due on the note. *See* (Doc. 7-4) at 5-6, (Doc. 7-6) at 4-5. The motions were denied by the state district court. (Docs. 7-5 and 7-7). On August 7, 2014, the judgment in the first state lawsuit was set aside for lack of standing, and the case was dismissed without prejudice. (Doc. 127) at 2.[3]

---

[1] The Court takes judicial notice of the mortgage and note, attached at (Doc. 125-1) at 8-30. *See Van Woudenberg v. Gibson*, 211 F.3d 560-568 (10th Cir. 2000) ("[T]he court is permitted to take judicial notice of … facts which are a matter of public record.").

[2] The Court takes judicial notice of the state court's records in the underlying foreclosure actions, *Wells Fargo Bank, N.A. v. The Unknown Spouse of Maria Cristina Coello-Colon, if any, et al.*, D-202-CV-2011-10470, and *Wells Fargo Bank, N.A. v. Maria Cristina Coello-Colon, et al.*, D-202-CV-2014-04552 (the first and second state lawsuits). *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

[3] It appears that Wells Fargo's standing was called into question in the first state lawsuit because it was the servicer of the loan, while Freddie Mac was the owner of the note. *See* (Doc. 12-1) (Plaintiff's Motion to Vacate Default Judgment and Sale for Lack of Standing, filed in first state lawsuit).

On July 8, 2014, Defendant filed a second foreclosure action in state court, which addressed the standing issues from the first lawsuit. (Doc. 125-1) at 5 (Case No. D-202-2014-04552, "second state lawsuit"); (Doc. 127) at 3. Following a stay due to Plaintiff's filing for Chapter 13 bankruptcy, the state district court entered judgment in favor of Defendant on January 9, 2020. (Doc. 125) at 3; (Doc. 125-1) at 31-36. The state court found that Wells Fargo had standing to bring the action and "is the real party in interest." (Doc. 125-1) at 31. The state court further held that Plaintiff "is in default in payment of the principal and interest on the Note and Mortgage," "the lien of [Wells Fargo's] real estate Mortgage is a valid first and prior lien against the property," and Wells Fargo "is entitled to have the same foreclosed and the premises described therein sold at public sale to satisfy any and all amounts due and owing upon the Mortgage and Note as adjudged below." *Id.* at 32-33. Accordingly, the state court found that Defendant was owed $518,944.92, which included the principal balance, interest, late charges and disbursements, insurance, and attorney fees and costs. *Id.* at 32. The court ordered that the mortgage be foreclosed, the property be sold, and the proceeds of the sale applied to the judgment due to Wells Fargo. *Id.* at 34-35.

Plaintiff appealed the judgment in the second state lawsuit, again asserting that Defendant did not have standing to foreclose because the mortgage was transferred to Defendant by way of a "blank indorsement." (Doc. 125-1) at 38. On July 21, 2021, the New Mexico Court of Appeals issued a memorandum opinion rejecting this argument as having no merit because Defendant "is both the holder of the note and the *named* entity to whom the mortgage was transferred." *Id.* (emphasis in original)  The New Mexico Court of Appeals affirmed the district court judgment in favor of Defendant. *Id.* at 39.

On June 6, 2013, while the parties were engaged in litigation in the first state lawsuit, Plaintiff filed her Complaint in this Court alleging that Defendant failed to provide a release of the mortgage "after settlement of the account balance had been made by Plaintiff and accepted and recorded by Defendant." (Doc. 1) at 1. Plaintiff asserts claims for breach of contract and quiet title and seeks declaratory relief terminating Defendant's claim to the subject property, injunctive relief requiring Defendant to release the mortgage, and an order of quiet title in the property to Plaintiff. *Id.* at 4. This case was stayed pending resolution of the state court proceedings, and the stay was lifted on August 16, 2021 after the New Mexico Court of Appeals issued its decision. (Doc. 122). In its Motion to Dismiss, Defendant argues that Plaintiff's claims are a collateral attack on the state court judgments and are barred by the *Rooker-Feldman* and collateral estoppel doctrines. (Doc. 125) at 5-9. In response, Plaintiff maintains that Defendant improperly failed to release the lien on the property after Plaintiff paid off the account balance, and that Defendant does not have standing regarding the property. (Doc. 126).

**II.     Legal Standard**

Federal Rule of Civil Procedure 12(b)(1) allows a party to raise the defense of the Court's lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994) (citations omitted). "If the court determines at any time, that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true "all well-pleaded factual allegations in a complaint and views these

4

allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009); *Morris v. City of Colorado Springs*, 666 F.3d 654, 660 (10th Cir. 2012). In order to survive a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (explaining that plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face"). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). "A claim has facial plausibility when the [pleaded] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Jordan-Arapahoe v. Bd. of Cty. Comm'rs*, 633 F.3d 1022, 1025 (2011) (quoting *Iqbal*, 556 U.S. at 663).

In addition, the Court takes note of Plaintiff's *pro se* status. "[A] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (citations omitted). In *Hall v. Bellmon*, the Tenth Circuit stated:

> We believe that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.

935 F.2d 1106, 1110 (10th Cir. 1991). Even so, the court "will not supply additional factual allegations to round out a plaintiff's complaint or to construct a legal theory on a plaintiff's behalf." *Id.*

**III.     Analysis**

Defendant challenges this Court's subject matter jurisdiction based on the *Rooker-Feldman* doctrine. The existence of subject matter jurisdiction is a threshold inquiry that must precede any merits-based determination. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). If a district court lacks jurisdiction, it has no authority to rule on the merits of a plaintiff's claims. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006). Thus, if the *Rooker-Feldman* doctrine applies to Plaintiffs' claims, the Court is without jurisdiction to address the merits of those claims.

The *Rooker-Feldman* doctrine is based on two Supreme Court cases. In *Rooker v. Fidelity Trust Co.*, the Supreme Court ruled that the state court judgment in question could only be reversed or modified "in an appropriate and timely appellate proceeding." 263 U.S. 413, 415 (1923). The Supreme Court held that, "[u]nder the legislation of Congress, no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify the [state court] judgment." *Id.* at 416. In *District of Columbia Court of Appeals v. Feldman*, the Supreme Court affirmed that federal district courts have no authority to review final judgments of state courts in judicial proceedings, but rather, federal "review of such judgments may be had only in [the Supreme Court]." 460 U.S. 462, 482 (1983). Accordingly, the *Rooker-Feldman* doctrine requires that state-court judgments be appealed to the United States Supreme Court and prevents federal district courts from overturning them. Put another way, "*Rooker-Feldman* is a jurisdictional prohibition on lower federal courts exercising appellate jurisdiction over state-court judgments." *Campbell v. City of Spencer*, 682 F.3d 1278, 1281 (10th Cir. 2012) ("[W]hen Congress vested the Supreme Court with appellate jurisdiction over state-court judgments, it

implied that the lower federal courts lacked authority to review state-court judicial proceedings.").

The *Rooker-Feldman* doctrine not only prohibits direct review of state court judgments by lower federal courts, it also prohibits "federal courts from issuing any declaratory relief that is inextricably intertwined with the state court judgment." *Facio v. Jones*, 929 F.2d 541, 543 (10th Cir. 1991) (citations omitted). The Tenth Circuit has explained that "[w]hen the state-court judgment is not itself at issue, the [*Rooker-Feldman*] doctrine does not prohibit federal suits regarding the same subject matter, or even the same claims, as those presented in the state-court action." *Campbell*, 682 F.3d at 1281. "[T]he essential point is that barred claims are those complaining of injuries caused by state-court judgments," and "an element of the claim must be that the state court wrongfully entered its judgment." *Id.* at 1283.

Applying the principles of the *Rooker-Feldman* doctrine, this Court lacks jurisdiction over Plaintiff's claims challenging the state court judgment of foreclosure. Plaintiff asserts that the state court wrongfully entered its judgment in favor of Defendant and seeks "a declaratory judgment terminating any legal and all interest Defendants claim to hold in the subject property." (Doc. 1) at 4. Plaintiff further asks for injunctive relief compelling Defendant to release the lien on the property and for an order quieting title of the property to Plaintiff. *Id.* These claims fall squarely within the *Rooker-Feldman* doctrine. Indeed, in a case with similar facts, the Tenth Circuit upheld a district court's dismissal of a plaintiff's complaint for quiet title pursuant to the *Rooker-Feldman* doctrine. *See Preston v. CitiMortgage*, 522 Fed. Appx. 426, 427-28 (10th Cir. 2013) (unpublished). The plaintiffs in that case challenged the validity of the mortgage, and the Tenth Circuit explained that the federal district court lacked subject matter jurisdiction because "CitiMortgage's ownership of the mortgage and validity of the foreclosure action were

conclusively resolved in the earlier state court action." *Id.* at 427. Therefore, the Tenth Circuit found that the plaintiffs' claims were "inextricably intertwined" with the state court's conclusions and barred by the *Rooker-Feldman* doctrine because, for the plaintiffs "to prevail in the case before us, we would have to 'review and reject those judgments.'" *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) and *Mann v. Boatright*, 477 F.3d 1140, 1147 (10th Cir. 2007)).

In response to Defendant's Motion to Dismiss, Plaintiff asserts that she was not in default on the mortgage, that she paid off the loan in July 2012, and that Defendant did not have a cause of action in the state court foreclosure proceeding. (Doc. 126) at 2-3. Plaintiff states that the fact she has paid off the loan "controls any judgment in the 2014 Foreclosure" and "must be considered here in this Court." *Id.* These issues were decided by the state court when it held that Plaintiff "is in default in payment of the principal and interest on the Note and Mortgage," "the lien of [Wells Fargo's] real estate Mortgage is a valid first and prior lien against the property," and Wells Fargo "is entitled to have the same foreclosed and the premises described therein sold at public sale to satisfy any and all amounts due and owing upon the Mortgage and Note as adjudged below." (Doc. 125-1) at 32-33 (further finding that Wells Fargo had standing to bring the foreclosure action and "is the real party in interest"). Therefore, the state court judgment established that the note had not been paid, that Plaintiff was in default on her obligations on the note, and that Defendant had the requisite standing and was entitled to foreclose on the property. Consequently, Plaintiff's claims are barred by the *Rooker-Feldman* doctrine. *See Campbell*, 682 F.3d at 1283 (explaining that *Rooker-Feldman* bars claims "complaining of injuries caused by state-court judgments" and "that the state court wrongfully entered its judgment.").

8

Plaintiff also argues that because she filed this federal case before the second state lawsuit was filed, this case is controlling. Specifically, in her "Memorandum," Plaintiff asserts that because the first state lawsuit was dismissed, and she filed her federal suit before the second state action was filed, the "doctrine of priority jurisdiction" applies and this case takes priority over the 2014 state court lawsuit. (Doc. 129). The "doctrine of priority jurisdiction" Plaintiff refers to was developed by the New Mexico state courts and provides that "a second suit based on the same cause of action as a suit already on file will be abated where the first suit is entered in a court of competent jurisdiction in the same state between the same parties and involving the same subject matter or cause of action, if the rights of the parties can be adjudged in the first action." *Valdez v. Ballenger*, 581 P.2d 1280, 1281 (1978) (citation omitted). Other courts in this district have found that the rule applies only to cases filed in more than one state court—not in a state court and federal court. *See, e.g., United Fin. Cas. Co. v. Schmidt*, 2013 WL 12246640, at *5 (D.N.M.) ("[T]he doctrine of priority jurisdiction only applies if the courts possess concurrent jurisdiction over two actions that were separately filed, [and] it is far from clear that the federal and state courts share concurrent jurisdiction over the two lawsuits."); *Burlington Ins. Co. v. Las Cruces Gospel Rescue Mission, Inc.*, 2011 WL 13284626, at *4 (D.N.M.) (declining to apply the priority jurisdiction doctrine to cases filed in state and federal courts because the rule "appears to involve only cases filed in more than one state court," and noting that in *Valdez*, where the doctrine was applied, the cases were filed in two state courts). The Court agrees with the reasoning of these courts and finds that the doctrine of priority jurisdiction does not apply here because the cases were not both filed in state court.

In addition, while the first state lawsuit was dismissed without prejudice, Plaintiff does not dispute that the second state lawsuit involves the same parties, the same mortgage, and the

9

same property that was at issue in the first state lawsuit. Since the second state lawsuit resulted in a finding that Plaintiff defaulted on the mortgage and that Defendant is the rightful holder of the note and mortgage, Plaintiff is challenging the issues that were resolved in the second state lawsuit. Accordingly, as in *Preston*, for Plaintiff to prevail in this case the Court "would have to review and reject [the state court] judgments." 522 Fed. Appx. at 427 (citation omitted). Essentially, Plaintiff lost in state court and invites this Court to review and reject the state court judgment, which is an action explicitly prohibited by the *Rooker-Feldman* doctrine. Moreover, the state court judgment is inextricably intertwined with the relief sought by Plaintiff because a declaratory judgment terminating Defendant's claim in the property and ordering Defendant to release the lien to Plaintiff inevitably requires overturning the state court's foreclosure judgment. *See Facio*, 929 F.2d at 543 (explaining that *Rooker-Feldman* specifically "prohibited … federal courts from issuing any declaratory relief that is inextricably intertwined with the state court judgment") (citations omitted); *see also Kline v. Deutsche Bank Nat'l Trust Co.*, 2013 WL 1668342 (10th Cir. 2013) (affirming lower court decision that *Rooker-Feldman* doctrine barred the plaintiff's challenge to a state court foreclosure judgment).

**IV.     Recommendation**

Based on the foregoing, the Court finds that it has no authority to reverse, modify or review the judgment issued by the state court in the underlying foreclosure action, and Plaintiff's claims for declaratory and injunctive relief are barred by the *Rooker-Feldman* doctrine. Therefore, this Court lacks subject matter jurisdiction over Plaintiff's claims and Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) require dismissal of this case. The Court does not reach the issue of collateral estoppel because it lacks jurisdiction to hear arguments on the merits. *See Brereton*, 434 F.3d 1218 (explaining that if a court lacks jurisdiction, it has no authority to rule

on the merits of a plaintiff's claims); *Garry v. Geils*, 82 F.3d 1372, 1365 (7th Cir. 1996) ("Where *Rooker-Feldman* applies, lower federal courts have no power to address other affirmative defenses, including *res judicata*.").

IT IS THEREFORE RECOMMENDED that Defendant's Motion to Dismiss, (Doc. 125), be GRANTED and that this case be DISMISSED with prejudice.

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN (14) DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c).  Written objections must be both timely and specific.  United States v. One Parcel of Real Prop., 73 F.3d 1057, 1060 (10th Cir. 1996).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  Failure to file timely and specific objections will result in waiver of de novo review by a district or appellate court.  In other words, if no objections are filed, no appellate review will be allowed.**